UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WARREN TIMOTHY JOHNSON,

                    Plaintiff,

          v.

THE CITY OF NEW YORK, DEPARTMENT
OF CORRECTIONS,
CAPTAIN BROWN, SHIELD # UNKNOWN,
C/O L. JOHNSON, SHIELD #18225,
C/O BREWSTER, SHIELD #10860

                    Defendant.

**MEMORANDUM OPINION &
ORDER**

09 Civ. 4685 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        Pro se Plaintiff Warren Timothy Johnson brings claims under (1) 42 U.S.C. §

1983 for violations of his Fourteenth Amendment rights, and (2) state law, for assault and

battery.  With respect to his federal claim, Johnson alleges that Defendants subjected him to

excessive force – while he was incarcerated at Riker's Island as a pre-trial detainee – by applying

tight handcuffs for approximately twenty minutes and by forcing him to sit in an air-conditioned

bullpen for approximately forty minutes.  Johnson further claims that he was deprived of

personal property in violation of the Fourteenth Amendment.  Defendants have moved for

summary judgment as to all of Plaintiff's claims.  (Docket No. 18)  For the reasons stated below,

Defendants' motion will be GRANTED.

# BACKGROUND[1]

In January 2009, Plaintiff Johnson was a pre-trial detainee housed in the Robert

N. Davoren Center on Riker's Island.  (Def. R. 56.1 Stat. ¶ 1)  On January 16, 2009, at

approximately 7:15 a.m., Department of Correction ("D.O.C.") personnel conducted a search of

Plaintiff's housing area.  (Id. ¶ 2)  Correction Officer LaTeaisha Johnson entered Plaintiff's cell

to search for contraband.  (See id. ¶ 3)  Inside Plaintiff's cell was a bag of clothes that Plaintiff

was planning to donate to a religious organization.  (Id. ¶ 4)  Because Plaintiff's cell contained

more clothing than the facility permits detainees to maintain, C.O. Johnson began placing both

Plaintiff's personal items and the donated clothes into one bag, in preparation for removing these

items from Plaintiff's cell.  (Myerberg Decl., Ex. A (Johnson Tr.) at 69; Myerberg Decl., Ex. C

(Property Receipt))  Plaintiff informed Officer Johnson that she was mixing his personal items

with the donated clothing, but the officer simply told Plaintiff to remain quiet.  (Myerberg Decl.,

Ex. A (Johnson Tr.) at 69)  Plaintiff then complained to the unit supervisor, Captain Ernest

Brown (id. at 69-70), but Brown told Plaintiff that he had excessive amount of clothing in his

cell.  (Def. R. 56.1 Stat. ¶ 5; see Myerberg Decl., Ex. A (Johnson Tr.) at 69-70)

After again being ordered to remain quiet during the search, Plaintiff became

increasingly "irritated" when C.O. Johnson did not respond to his complaints.  (Def. R. 56.1

Stat. ¶ 6-8)  The exchange became heated and Plaintiff testified that he had to "catch" himself

from physically striking Officer Johnson:

---

[1]  The facts are taken largely from Defendants' Local Rule 56.1 Statement, the transcript of
Plaintiff's deposition, and the "Affirmation of Warren Timothy Johnson in Opposition to
Defendants' Motion for Summary Judgment."  ("Johnson Aff. I")  Johnson Aff. I contains
Plaintiff's response to Defendants' Rule 56.1 Statement.  Unless otherwise noted, citations to the
parties' Rule 56.1 statements concern factual assertions that are admitted or are deemed admitted
because they were not contradicted by citations to admissible evidence.  See Giannullo v. City of
New York, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party . . .  fails to controvert a fact
so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted.").

> Q.  So at any point did Correction Officer Johnson tell you to shut up?
> A.  No.  She told me to shut the fuck up.
> Q.  What did you say back?
> A.  You bitch, you shut the fuck up.

(Myerberg Decl., Ex. A (Johnson Tr.) at 106)

> Q.  Did you raise your voice?
> A.  Yes, I raised my voice.  I'm a man, I'm going to raise my voice.
>       . . .
> Q.  So Johnson said to you, no talking on the search, no talking on the search.
>      And what did you say back?
> A.  Basically I kept implying you are not listening to me.  And I started to step in
>      my cell but I caught myself.
> Q.  Why did you catch yourself?
> A.  Because I would have hurt that woman [C.O. Johnson] in my
>      cell.  I would have hurt that woman.  Literally I would have hurt that woman
>      in my cell.  Because, like I said, she is not tough.  Most of them in there is not
>      tough.  Actually, I feel, you know, I got real, I got strong confidence in myself
>      and my fight game, my fighting ability.  And stop shaking the tree because
>      something might fall out there that you might not be able to handle. . . .

(Myerberg Decl., Ex. A (Johnson Tr.) at 98, 99-100)

During a previous search, Captain Brown had found a razor blade in Plaintiff's

cell.  (Def. R. 56.1 Stat. ¶ 19)[2]  Observing the escalating situation between Plaintiff and C.O.

Johnson, Brown attempted to handcuff Plaintiff.  (Myerberg Decl., Ex. A (Johnson Tr.) at 99-

100, 110, 115-16)  However, Plaintiff resisted by pulling his wrists away, and another officer had

to assist Brown in placing Plaintiff in plastic flex cuffs.  (Def. R. 56.1 Stat. ¶ 12; Myerberg Decl.,

Ex. A (Johnson Tr.) at 116)  Plaintiff was then brought to another part of the facility called the

"day room."  (Def. R. 56.1 Stat.  ¶ 15)  While in the day room, Plaintiff observed Correction

Officer Sandra Brewster carry a bag containing items that had been removed from Plaintiff's cell

---

[2]  During his deposition, Plaintiff testified that the razor blade was not his.  (Myerberg Decl., Ex.
A (Johnson Tr.) at 16-18)

during the search.  (Id.)  Captain Brown then placed Plaintiff in metal handcuffs and removed the plastic flex cuffs.  (Id. ¶ 20)

Plaintiff was later brought to the "bullpen," which appears to be one of the four temporary holding areas where D.O.C. personnel process pre-trial detainees as they arrive in the housing unit.  (Myerberg Decl., Ex. A (Johnson Tr.) at 124-25)  The bullpen is air-conditioned and is known as the "cool off" pen.  (Id. at 125, 126)  Plaintiff was then dressed in shorts, a tank top, and shower shoes.  After about twenty minutes, Plaintiff's handcuffs were removed, but he remained in the bullpen for a total of "about 40 minutes."[3]  (Id. at 127, 129)  Presumably to protect himself from the cold, Plaintiff wrapped his body and feet in toilet tissue he found in the bullpen.  (See id. at 75, 127)

There is no evidence that Plaintiff reported any injuries, requested medical attention, or took any medication for any injuries after the incident.  (Def. R. 56.1 Stat. ¶ 28)  When Plaintiff was transferred to the Downstate Correctional Facility, he did not report any injuries when he met with medical staff as part of the intake process.  (Id. ¶ 30)  The only injuries Plaintiff mentioned at his deposition were abrasions to his wrists, which he testified were

---

[3]  During his deposition, Plaintiff testified that he was inside the air-conditioned bullpen for "about 40 minutes."  (Myerberg Decl., Ex. A (Johnson Tr.) at 129)  In a second affirmation dated September 9, 2010 ("Johnson Aff. II"), however, Plaintiff asserts that he was in the bullpen for two hours.  (Johnson Aff. II ¶ 33)  Plaintiff's assertion in his affirmation will be disregarded. Plaintiff cannot create an issue of material fact by submitting an affirmation that contradicts his earlier deposition testimony.  See Hayes v. New York City Dep't of Corrections, 84 F.3d 614, 619 (2d Cir. 1996) ("[A] party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony. . . . Thus, factual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial."); Flaherty v. Filardi, No. 03 Civ. 2167 (LTS)(HBP), 2007 WL 2734633, at *7 (S.D.N.Y. Sept. 19, 2007) ("To the extent [the pro se] Plaintiff's affirmations conflict with [his] prior deposition testimony, they will be disregarded.").

"minute" and did not cause him any pain once the handcuffs were removed.  (Id. ¶¶ 31, 32;
Myerberg Decl., Ex. A (Johnson Tr.) at 143, 146)

   When Plaintiff was returned to his cell, he discovered that his clothing, watch,
wedding ring, family pictures, and religious items had been removed.  (Myerberg Decl., Ex. A
(Johnson Tr.) at 132; Johnson Aff. II, ¶¶ 36, 43, 46)

   Plaintiff received vouchers for the clothing and books that were removed during
the January 16, 2009 search and was aware of the procedures for obtaining the return of property
removed during a search.  Plaintiff never attempted to reclaim any of the vouchered property,
however.  (Def. R. 56.1 Stat. ¶¶ 33-35; Myerberg Decl., Ex. A (Johnson Tr.) at 132; Ex. C
(Property Receipt); Johnson Aff. I, ¶¶ 33-35)  While Plaintiff claims that he never received any
vouchers for his wedding ring or watch, he failed to file a grievance concerning this issue, and
failed to request grievance forms to file such a grievance.  (Def. R. 56.1 Stat. ¶¶ 37-39; Myerberg
Decl., Ex. A (Johnson Tr.) at 139-40)[4]

   Plaintiff filed his complaint in this action on March 31, 2009.

## DISCUSSION

   Summary judgment is warranted when the moving party shows that "there is no
genuine dispute as to any material fact" and that it "is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(a).  "A dispute about a 'genuine issue' exists for summary judgment purposes
where the evidence is such that a reasonable jury could decide in the non-movant's favor."
Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir. 2008).  "'[W]here the nonmoving party

---

[4]  In his first affirmation, Johnson asserts that no grievance forms were available in his housing
unit, and that his requests to correction officers for grievance forms were not heeded.  (Johnson
Aff. I, ¶¶ 38-39)  At his deposition, however, Johnson testified that he never asked a correction
officer for a grievance form.  (Myerberg Decl., Ex. A (Johnson Tr.) at 139-40)  To the extent that
Johnson's statements in his affirmation contradict his earlier deposition testimony, the Court has
disregarded those statements.  See Hayes, 84 F.3d at 619; Flaherty, 2007 WL 2734633, at *7.

will bear the burden of proof at trial, Rule 56 permits the moving party to point to an absence of evidence to support an essential element of the nonmoving party's claim.'" <u>Watson v. Consol. Edison Co. of N.Y., Inc.</u>, 374 F. App'x 159, 161 (2d Cir. 2010) (quoting <u>Bay v. Times Mirror Magazines, Inc.</u>, 936 F.2d 112, 116 (2d Cir. 1991)).

In deciding a summary judgment motion, the Court "'resolve[s] all ambiguities, and credit[s] all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment.'" <u>Spinelli v. City of New York</u>, 579 F.3d 160, 166 (2d Cir. 2009) (quoting <u>Brown v. Henderson</u>, 257 F.3d 246, 251 (2d Cir. 2001)).  However, a "'party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment . . . .[M]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist.'" <u>Hicks v. Baines</u>, 593 F.3d 159, 166 (2d Cir. 2010) (alterations in original) (quoting <u>Fletcher v. Atex, Inc.</u>, 68 F.3d 1451, 1456 (2d Cir. 1995)).

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which provides: "[e]very person who, under color of any statute  . . . subjects, or causes to be subjected, any citizen of the United States or other person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ."

## I.      PLAINTIFF'S EXCESSIVE FORCE CLAIM WILL BE DISMISSED

### A.      Applicable Law

"A pretrial detainee who is subjected to excessive force may bring a claim under § 1983." <u>Cunningham v. Rodriguez</u>, No. 01 Civ. 1123 (DC), 2002 WL 31654960, at *4 (S.D.N.Y. Nov. 22, 2002).  "The right of pretrial detainees to be free from excessive force amounting to punishment is protected by the Due Process Clause of the Fourteenth

Amendment."[5]  United States v. Walsh, 194 F.3d 37, 47 (2d Cir. 1999).  In determining whether

a plaintiff has made out an excessive force claim under the Due Process Clause of the Fourteenth

Amendment, courts apply the same standards applicable to excessive force claims brought by

convicted inmates under the Eighth Amendment.  Virella v. Pozzi, No. 05 CIV. 10460 (RWS),

2006 WL 2707394, at *3 (S.D.N.Y. Sept. 20, 2006) ("[t]he Second Circuit applies the same

standard to excessive force claims brought under the Fourteenth Amendment as under the Eighth

Amendment") (citations omitted)); see also Pearson v. Cantor, No. 08-CV-789 (NGG), 2010 WL

3420532, at *3 (E.D.N.Y. Aug. 26, 2010).  Accordingly, the Supreme Court's analysis of the

Eighth Amendment in Hudson v. McMillian, 503 U.S. 1 (1992), applies here.  See Cunningham,

2002 WL 31654960, at *4.

> Under Hudson,
>
> [t]o demonstrate a constitutional violation . . . , a plaintiff alleging a claim of excessive
> force must establish both an objective and subjective element.  United States v. Walsh,
> 194 F.3d 37, 49-50 (2d Cir. 1999).  The objective element requires that the force
> allegedly used was "sufficiently serious or harmful enough to be actionable." Id. at 50.
> The amount of force used must have been more than de minimis, unless it was
> "repugnant to the conscience of mankind."  Hudson v. McMillian, 503 U.S. 1, 9-10.  The
> subjective element "requires a showing that the defendant had the necessary level of
> culpability, shown by actions characterized by wantonness in light of the particular
> circumstances surrounding the challenged conduct."  Sims v. Artuz, 230 F.3d 14, 21 (2d
> Cir. 2000).  The crucial question in this respect is "whether force was applied in a good-
> faith effort to maintain or restore discipline, or maliciously and sadistically to cause
> harm."  Id. at 21 (quoting Hudson, 503 U.S. at 7).

Pearson, 2010 WL 3420532, at *3; see also Cunningham, 2002 WL 31654960, at *4 (citing

Walsh, 194 F.3d at 48); Virella, 2006 WL 2707394, at *3 ("To establish a constitutional

violation, and hence a claim pursuant to section 1983, a plaintiff must meet both a subjective and

---

[5]  "The Eighth Amendment's protection [against cruel and unusual punishment] does not apply
'until after conviction and sentence.'"  United States v. Walsh, 194 F.3d 37, 47 (2d Cir. 1999)
(quoting Graham v. Connor, 490 U.S. 386, 392 n.6 (1989)) (citing Bell v. Wolfish, 441 U.S. 520,
535 n.16 (1979)).

an objective requirement." (citing <u>Walsh</u>, 194 F.3d at 48-49)).  Where a plaintiff fails to satisfy

either of these prongs, the defendant is entitled to summary judgment.  See <u>Cunningham</u>, 2002

WL 31654960, at *1, *5 (granting summary judgment where "plaintiff [was] unable to satisfy

either the objective or subjective prong of the <u>Hudson</u> excessive force test").

       1.      **Objective Inquiry**

To meet <u>Hudson</u>'s objective prong,

> the plaintiff must show that the alleged use of force is "objectively sufficiently
> serious or harmful enough" to be actionable.  A claim of excessive force may be
> established even if the victim does not suffer serious or significant injury, if
> plaintiff can demonstrate that the amount of force used is more than <u>de minimis</u>,
> or, otherwise involves force "repugnant to the conscience of mankind."  The
> Second Circuit has held that not "every push or shove, even if it may later seem
> unnecessary in the peace of the judge's chambers, violates a prisoner's
> constitutional rights."

<u>Cunningham</u>, 2002 WL 31654960, at *4 (internal citations omitted).

The objective component is "context specific, turning upon 'contemporary

standards of decency.'"  <u>Amaker v. Coombe</u>, No. 96 Civ. 1622 (JGK), 2003 WL 21222534, at *7

(S.D.N.Y. May 27, 2003) (quoting <u>Blyden v. Mancusi</u>, 186 F.3d 252, 263 (2d Cir. 1999)).

With respect to the use of handcuffs, "[t]here is authority that the use of tightly

fastened handcuffs that result in either no injury or only minor injuries is not an actionable use of

excessive force."  <u>Brown v. Banks</u>, No. 06 Civ. 14304 (LTS)(HBP), 2008 WL 3833227, at *2

(S.D.N.Y. Aug. 14, 2008); <u>see</u>, <u>e.g.</u>, <u>Warren v. Purcell</u>, No. 03 Civ. 8736 (GEL), 2004 WL

1970642, at *8 (S.D.N.Y. Sept. 3, 2004) ("Although the use of excessively tight handcuffs can

constitute a violation of the Eighth Amendment . . . it appears highly unlikely that . . . pain in

[the plaintiff's] wrists and pain, numbness and swelling in his foot and ankle, would be

considered sufficiently serious[, in the absence of evidence that the plaintiff suffered any lasting

injury from the restraints,] to rise to the level of an Eighth Amendment violation." (citing

Davidson v. Flynn, 32 F.3d 27, 30 (2d Cir. 1994))); Sulkowska v. City of New York, 129 F.

Supp. 2d 274, 292 (S.D.N.Y. 2001) (where the plaintiff testified that her "handcuffs were tight,"

the court noted that "[p]laintiff's restraint by handcuffs was merely an incident of her detention,

and does not amount to the type of punishment that violates the Fourteenth Amendment").

> As to exposure to cold temperatures,
>
> > "[a]n Eighth Amendment claim may be established by proof that the inmate was subjected for a prolonged period to bitter cold," Gaston v. Coughlin, 249 F.3d 156, 164 (2d Cir. 2001), provided that the cell's conditions were "objectively, sufficiently serious that [the prisoner] was denied the minimal civilized measure of life's necessities." Id.

Gardner v. Mental Health Unit of Sullivan Corr. Facility, No. 07 Civ. 5535(WHP), 2009 WL

1834382, at *3 (S.D.N.Y. June 17, 2009) (alteration in original).

> In Corselli v. Coughlin, 842 F.2d 23, 27 (2d Cir. 1988), the Second Circuit
>
> > reversed the grant of summary judgment in favor of defendants where there was evidence that the prisoner plaintiff had been deliberately exposed to bitter cold in his cell block for three months. See also Wright, 387 F.2d at 526 (vacating a dismissal on the pleadings where the complaint alleged that inmates were deliberately exposed to bitter cold and deprived of basic hygiene products while in solitary confinement). Accord Dixon v. Godinez, 114 F.3d 640, 643-45 (7th Cir. 1997) (vacating summary judgment and remanding for determination of duration and severity of prisoner's exposure to cold); Chandler v. Baird, 926 F.2d 1057, 1065-66 (11th Cir. 1991) (vacating summary judgment where prisoner testified that he was denied basic sanitation items for two days and that his cell was frigid for 16 days during which he was denied bedding and all clothing except undershorts); Beck v. Lynaugh, 842 F.2d 759, 761 (5th Cir. 1988) (vacating summary dismissal of claim that prisoners were exposed to winter cold due to broken windows).

Gaston, 249 F.3d at 164-65.

> Where inmates have not been exposed to cold temperatures for prolonged

periods, however, their claims have been rejected. See, e.g., Tafari v. McCarthy, 714 F.

Supp. 2d 317, 358 (N.D.N.Y. 2010) ("Plaintiff alleges that 'on many occasions' he was

exposed to 'below zero weather' for an hour at a time during recreation period. Although

this hour was likely very uncomfortable and was repeated often, the evidence does not

show that Plaintiff was ever exposed to bitter cold temperatures for the kinds of

'prolonged' periods described in Second Circuit precedent."); Gardner, 2009 WL

1834382, at *3 ("[Plaintiff's] allegation that he was 'very cold' is not objectively serious

enough to constitute an Eighth Amendment violation, particularly when it lasted no more

than seven days during the months of August and October.").

### 2.   <u>Subjective Inquiry</u>

Where a plaintiff alleges

> excessive use of force by prison guards, the objective component does not require any particular "quantity of injury," for "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated." <u>Hudson</u>, 503 U.S. at 9. Thus, in cases of deliberate use of force, the subjective standard predominates: the "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." 503 U.S. at 6-7.

<u>Warren</u>, 2004 WL 1970642, at *7. Accordingly, "the subjective requirement is satisfied

if the defendant acted wantonly[6] with a 'sufficiently culpable state of mind.'"

<u>Cunningham</u>, 2002 WL 31654960, at *4 (quoting <u>Walsh</u>, 194 F.3d at 49-50) (citing

<u>Hudson</u>, 503 U.S. at 8). In order for this standard to be met, it is "necessary that the

prison official 'knows of and disregards an excessive risk to inmate health or safety; the

official must both be aware of facts from which the inference can be drawn that a

substantial risk of serious harm exists, and he must also draw the inference.'" <u>Warren</u>,

2004 WL 1970642, at *6 (quoting <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994)).

---

[6] "[W]antonness does not have a fixed meaning but must be determined with 'due regard for differences in the kind of conduct against which an Eighth Amendment objection is lodged.'" <u>Wilson v. Seiter</u>, 501 U.S. 294, 302 (1991) (quoting <u>Whitley v. Albers</u>, 475 U.S. 312, 320 (1986)). "The wantonness of conduct does not depend upon its effect on the prisoner, but rather 'upon the constraints facing the <u>official</u>.'" <u>Davidson</u>, 32 F.3d at 30 n.2 (emphasis in original) (quoting <u>Wilson</u>, 501 U.S. at 303).

The Second Circuit has instructed lower courts to consider the following factors in making a determination as to whether a defendant acted maliciously:

> (1) "the extent of the plaintiff's injuries"; (2) "the need[] for the application of force"; (3) "the correlation between that need and the amount of force used"; (4) "the threat reasonably perceived by the defendants"; and (5) "any efforts made by the defendants to temper the severity of a forceful response."

Clarke v. City of New York, No. 10 Civ. 420 (SHS)(KNF), 2010 WL 1948595, at *3 (S.D.N.Y. May 14, 2010) (quoting Romano v. Howarth, 998 F.2d 101, 105 (2d Cir. 1993)).

###### B.    Analysis

####### 1.    Handcuffs

With respect to Plaintiff's "tight handcuffs" claim, it is clear from a review of Plaintiff's deposition testimony that he cannot satisfy either the objective or the subjective prongs of the Hudson test.

As to the objective test, Plaintiff testified that he did not complain about his alleged injury because he considered it "minute" and because there was no lasting pain after the handcuffs were removed:

> Q.  How long did it hurt for?
> A.  It didn't hurt – the pain stopped after they took the cuffs off.  It was the fact that I had abrasions on my wrist.
> Q.  So you had abrasions to your wrist but the wrist didn't actually hurt?
> A.  Right.
> . . .
>
> Q.  In intake did you complain about your injury to your wrist?
> A.  No.
> Q.  Why didn't you complain about it?
> A.  Mr. Myerberg, I was a rugged little kid growing up.  Stuff like that is minute.
> . . .

(Myerberg Decl., Ex. A (Johnson Tr.) at 143, 145-46)

Given Plaintiff's account of the discomfort he suffered, this Court concludes that the alleged conduct involving tightly fastened handcuffs is not "sufficiently serious or harmful

enough" to be actionable.  See Walsh, 194 F.3d at 49-50; see also Brown, 2008 WL 3833227, at

*2 ("There is authority that the use of tightly fastened handcuffs that result in either no injury or

only minor injuries is not an actionable use of excessive force.").  It is likewise clear that the

handcuffing here does not constitute conduct that is "repugnant to the conscience of mankind"

based on contemporary standards of decency.  See Walsh, 194 F.3d at 48 (citing Hudson, 503

U.S. at 9-10).

        As to the subjective inquiry, this Court finds that the "force was applied in a

good-faith effort to maintain or restore discipline, . . . [and not] maliciously and sadistically to

cause harm."  See id. at 48-49.  Plaintiff testified that he was upset by the treatment of his

belongings, that he raised his voice, and that he contemplated physically harming Correction

Officer Johnson.

> Q.  Did you raise your voice?
> A.  Yes, I raised my voice.  I'm a man, I'm going to raise my voice.
>     . . . .
> Q.  So Johnson said to you, no talking on the search, no talking on the search.
>     And what did you say back?
> A.  Basically I kept implying you are not listening to me.  And I started to step in
>     my cell but I caught myself.
> Q.  Why did you catch yourself?
> A.  Because I would have hurt that woman [Correction Officer Johnson] in my
>     cell.  I would have hurt that woman.  Literally I would have hurt that woman
>     in my cell.  Because, like I said, she is not tough.  Most of them in there is not
>     tough.  Actually, I feel, you know, I got real, I got strong confidence in myself
>     and my fight game, my fighting ability.  And stop shaking the tree because
>     something might fall out there that you might not be able to handle. . . .
>
>     . . . .
> Q.  So the situation escalated when she told you . . . to shut the fuck up?
> A.  Yes.
> Q.  And at that point then you became belligerent after she said [that] to you?
> A.  Yeah.
> Q.  So at this point Captain Brown is in that area watching this exchange?
> A.  Yes.
> Q.  And at that point after that exchange with Correction Officer Johnson this is

when you are handcuffed?
A. Right.

(Myerberg Decl., Ex. A (Johnson Tr.) at 98, 99-100, 110-11)

Under the circumstances, it cannot be said that Plaintiff was handcuffed maliciously or sadistically to cause harm.  From Plaintiff's testimony alone, it is clear that there was a risk of a physical altercation between Plaintiff and the correction officer searching his cell. It is likewise clear – from Plaintiff's account of what the correction officers said and did at the time he was handcuffed – that the correction officers were not acting maliciously or sadistically:

Q. After you had gotten belligerent in your cell and Captain Brown handcuffed you, did he say anything when he handcuffed you?
A. I told you to be quiet, we could have avoided all of this.
Q. How did he handcuff you?  How did he do it?
A. He pulled his cuffs out, tried to grab my wrists.  I pulled my wrists back from him.  He is like, yo, turn around, face the wall.  I'm, no, you are not putting cuffs on me.  Another officer that knew me, he's like, I got him. . . . . He pulled out his flex cuffs and puts flex cuffs on me.
     . . .
Q. Did [the unnamed Correction Officer] . . . tell you why he was putting the handcuffs on you?
A. He was like, you just won't listen.
Q. So he said he put the handcuffs on you because you weren't following their orders?
A. Basically.
     . . .
A. [Captain] Brown told me to chill out.  Be easy now.  This will be over in a little bit and I'll go back to my cell.

(Id. at 115-116, 117, 119)

Under the Second Circuit's five-factor test for maliciousness, it is apparent that: (1) Plaintiff's injuries were minor (id. at 143, 146); (2) Plaintiff was handcuffed in a good-faith effort to maintain or restore discipline in the face of his belligerent behavior; (3) the use of handcuffs was necessary to prevent a potential physical altercation between Plaintiff and the correction officer searching his cell (see id. at 98, 99-100, 117-19); (4) Defendants reasonably

perceived Plaintiff as a threat, given not only his behavior at that time but his previous possession of a razor blade (id. at 16, 98, 99-100); and (5) the amount of force used by Defendants was proportional to the threat Plaintiff represented.  See Clarke, 2010 WL 1948595, at *3 (quoting Romano, 998 F.2d at 105).

Accordingly, Defendants are entitled to summary judgment concerning Plaintiff's excessive force claim under § 1983 to the extent that claim is based on tightly fastened handcuffs.

## 2.    Exposure to Cold Temperatures

Plaintiff also contends that his forty-minute exposure to cold temperatures in the air-conditioned bullpen (Myerberg Decl., Ex. A (Johnson Tr.) at 129) constitutes a violation of the Fourteenth Amendment.  Plaintiff was not '"subjected for a prolonged period to bitter cold'" such "that the cell's conditions were 'objectively, sufficiently serious that [the prisoner] was denied the minimal civilized measure of life's necessities.'"  See Gardner, 2009 WL 1834382, at *3 (emphasis added) (quoting Gaston, 249 F.3d at 164) (citing Corselli, 842 F.2d at 27).  Even considering the facts in the light most favorable to Plaintiff, Defendants' alleged conduct does not rise to level of what is required to maintain a Fourteenth Amendment claim for cruel and unusual punishment.  While being left in an air conditioned room for forty minutes in minimal clothing may be unpleasant, it is not cruel and unusual punishment; Plaintiff was not "denied 'the minimal civilized measure of life's necessities.'"  See Gaston, 249 F.3d at 164 (quoting Farmer, 511 U.S. at 834).  Accordingly, Defendants are likewise entitled to summary judgment concerning Plaintiff's excessive force claim to the extent that claim is based on exposure to cold temperatures.

14

II.     **PLAINTIFF'S DEPRIVATION OF**
        **PROPERTY CLAIM WILL BE DISMISSED**

   The Fourteenth Amendment provides, in relevant part, that:

 No state shall . . .  deprive any person of life, liberty, or property, without due
process of law . . . .

U.S. Const. amend XIV, § 1.

   Defendants argue that they are entitled to summary judgment on Plaintiff's

deprivation of property claim because (1) Plaintiff failed to pursue administrative remedies as

required by the Prisoner Litigation Reform Act ("PLRA"); and (2) Plaintiff failed to make use of

state law remedies as required by courts in this District.  (Def. Br. 12-14)

  A.     **Administrative Remedies Were Available**
    **to Plaintiff Under the Prisoner Litigation Reform Act**

    1.     **Applicable Law**

   "The threshold question in any suit regarding prison conditions is whether the

plaintiff has complied with the exhaustion requirement of the [Prisoner Litigation Reform Act]."

Warren, 2004 WL 1970642, at *4.

   The PLRA provides, in pertinent part, that:

 [n]o action shall be brought with respect to prison conditions under section 1983
. . . or any other Federal law, by a prisoner confined in any jail, prison or other
correctional facility until such administrative remedies as are available are
exhausted.

42 U.S.C. § 1997e(a) (2006).

   "[I]n enacting the PLRA, Congress sought 'to reduce the quantity and improve

the quality of prisoner suits . . . [as well as to provide] corrections officials time and opportunity

to address complaints internally before allowing the initiation of a federal case.'"  Winston v.

Woodward, No. 05 Civ. 3385(RJS), 2008 WL 2263191, at *5 (S.D.N.Y. May 30, 2008)

(alterations in original) (quoting Porter v. Nussle, 534 U.S. 516, 524-25 (2002)) (citing Brownell v. Krom, 446 F.3d 305, 310 (2d Cir. 2006); Ruggiero v. County of Orange, 467 F.3d 170, 173 (2d Cir. 2006); Abney v. McGinnis, 380 F.3d 663, 667 (2d Cir. 2004)).  "Although the Second Circuit has clarified that failure to exhaust administrative remedies does not deprive the courts of jurisdiction, exhaustion is still a statutory prerequisite to bringing suit."  Warren, 2004 WL 1970642, at *4 (citing Richardson v. Goord, 347 F.3d 431, 433-34 (2d Cir. 2003)).

"A failure by an inmate to exhaust his administrative remedies results in an absolute bar of the case:  '1997e(a) requires exhaustion of available administrative remedies before inmate-plaintiffs may bring their federal claims to court at all.'"  Pack v. Ross, No. 05 CV 9914 (LBS), 2006 WL 2714711, at *2 (S.D.N.Y. Sept. 21, 2006) (quoting Neal v. Goord, 267 F.3d 116, 122 (2d Cir. 2001)).  The PLRA

> "requires proper exhaustion," Woodford v. Ngo, 548 U.S. 81, 93 (2006), which
> means the prisoner must "compl[y] with the agency's deadlines and other critical
> procedural rules," id. at 90.  Further, the exhaustion requirement applies even
> where a prisoner seeks relief "not available in grievance proceedings, notably
> money damages."  [Porter, 534 U.S. at 524]

Dixon v. Laboriel, No. 01 Civ. 3632 (LAP), 2010 WL 2365860, at *2 (S.D.N.Y. June 10, 2010).

"[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  Porter, 534 U.S. at 532; see also Winston, 2008 WL 2263191, at *5 ("The exhaustion requirement applies with equal force to actions concerning corrections officers' use of excessive force." (citing Porter, 534 U.S. at 520; Ruggiero, 467 F.3d at 173)).  "Failure to exhaust administrative remedies is an affirmative defense."  Winston, 2008 WL 2263191, at *5 (citing Giano, 380 F.3d at 675).

"Where a prisoner challenges defendants' assertion that the prisoner failed to exhaust his administrative remedies prior to filing suit, a court analyzes that assertion under the three-part framework articulated in Hemphill v. New York, 380 F.3d 680 (2d Cir. 2004)." Dixon, 2010 WL 2365860, at *3.

The three-part test is as follows:

> First, the court determines "whether administrative remedies were in fact available to the prisoner." Hemphill, 380 F.3d at 686 (internal quotation marks omitted). Second, "[t]he court should also inquire as to whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." Id. (citations omitted). Finally, if administrative remedies were in fact available and defendants may properly assert non-exhaustion, "but . . . the plaintiff nevertheless did not exhaust available remedies, the court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with administrative procedural requirements." Id. (internal quotation marks omitted).

Id. (alterations in original); see also Yeldon v. Ekpe, 159 F. App'x 314, 316 (2d Cir. 2005) ("The exhaustion requirement may be satisfied if:  (1) administrative remedies were not, in fact, 'available' to the prisoner; and (2) the defendants should be estopped from raising non-exhaustion as an affirmative defense; or (3) there were special circumstances which justified the failure to administratively exhaust the claim." (citing Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004)).

"The test for deciding whether the ordinary grievance procedures were available must be an objective one:  that is, would 'a similarly situated individual of ordinary firmness' have deemed them available." Hemphill, 380 F.3d at 688 (citing Davis v. Goord, 320 F.3d 346, 353 (2d Cir. 2003)).  Courts in this district have found that where a prison fails to provide access to grievance forms, a prisoner's complaint cannot be dismissed for failure to exhaust available administrative remedies.  See, e.g., Feliciano v. Goord, No. 97 Civ. 263 (DLC), 1998 WL

436358, at *2 (S.D.N.Y. July 27, 1998) ("[Plaintiff] further states that the defendants refused to provide him with grievance forms, assured him that the incidents would be investigated by staff as a prerequisite to filing a grievance, and provided [Plaintiff] with no information about the results of an investigation.  The defendants respond that regardless of his alleged attempts [to] file a grievance, [Plaintiff] failed to do so and thus did not exhaust his administrative remedies as required by the PLRA.  Taking the facts as asserted by the plaintiff as true, dismissal is not appropriate on this ground."); Burns v. Moore, No. 99 Civ. 977 (LMM)(THK), 2002 WL 91607, at * 5 (S.D.N.Y. Jan. 24, 2002) (noting that "if an inmate is not allowed to file a grievance by prison authorities, a question exists as to whether he . . . had any available administrative remedies" (citations omitted)); Polite v. Barbarin, No. 96 CIV. 6818 (DLC), 1998 WL 146687, at *1 (S.D.N.Y. Mar. 25, 1998) (finding that the PLRA did not bar suit for failure to exhaust administrative remedies when corrections officials did not respond to plaintiff's grievances). Indeed, "[a] custodian cannot prevent an inmate's access to a grievance procedure, thereby frustrating the inmate's attempt to resolve his complaints administratively, and then defend against the inmate's subsequent lawsuit by faulting the inmate for failure to exhaust the administrative process."  Kendall v. Kittles, No. 03 Civ. 628 (GEL), 2003 WL 22127135, at *4 (S.D.N.Y. Sept. 15, 2003).  As Judge Lynch noted, "Congress could not have intended the PLRA's administrative exhaustion requirement to produce such a Kafkaesque result."  Id.

Where a defendant has not engaged in such conduct, however, courts routinely grant summary judgment against plaintiffs who have failed to exhaust administrative remedies as required by the PLRA.  See, e.g., Calderon v. Nealon, No. 9:09-CV-1001, 2011 WL 455120, at *5 (N.D.N.Y. Feb. 4, 2011) ("defendants' motion for summary judgment will be granted based on plaintiff's failure to exhaust administrative remedies as required by the PLRA"); Winston v.

<u>Dodge</u>, No. 07 Civ. 1805(RMB), 2008 WL 3166678, at *3 (S.D.N.Y. Aug. 5, 2008) (granting

summary judgment where "Plaintiff has failed to exhaust his administrative remedies"); <u>Barbaro</u>

<u>v. United States ex rel. Fed. Bureau of Prisons FCI Otisville</u>, No. 05 Civ. 6998 (DLC), 2008 WL

564622, at *3 (S.D.N.Y. Mar. 3, 2008) ("[Defendants] are entitled to judgment as a matter of law

on the basis of [plaintiff's] failure to exhaust his administrative remedies."); <u>see also</u> <u>Morales v.</u>

<u>Dzurenda</u>, 383 F. App'x 28, 29 (2d Cir. 2010) ("Upon <u>de novo</u> review, we agree with the District

Court that plaintiff failed properly to exhaust his administrative remedies, and did not

demonstrate special circumstances sufficient to excuse his failure to exhaust.  Accordingly, we

affirm the judgment of the District Court." (citation omitted)).

      2.      **<u>Analysis</u>**

      Here, Plaintiff's deposition testimony is once again is fatal to his claim.  While

Plaintiff testified that his housing unit was "out of forms," Plaintiff conceded that he had made

no effort to obtain the necessary forms:

> Q.  Did you file a grievance?
> A.  The housing area didn't have none in their box.
> Q.  Did you ask anyone else for forms?
> A.  No.
> Q.  Why didn't you ask other people for forms?
> A.  Who am I going to ask for forms?  I can't walk up in anybody's housing area.
> Q.  Did you ask another correction officer for forms?
> A.  No.
> Q.  Did you inform any correction officer that they were out of forms?
> A.  No.
> Q.  Why didn't you do that?
> A.  Because our officer said she had to get some.
> Q.  Did you ever follow up and ask if they had gotten some?
> A.  After that incident I was out of there, like, 96 hours later?
> Q.  Within those 96 hours did you ever follow up?
> A.  To make a long story short I didn't file [a] grievance.  If that's where you are going with it.

(Myerberg Decl., Ex. A (Johnson Tr.) at 139-40)

   Plaintiff's testimony demonstrates that he made no effort to obtain the necessary grievance forms.  There is no basis for applying estoppel here, because "there is no evidence in the record that defendants have inhibited plaintiff from administratively exhausting his remedies or used coercive pressure to induce plaintiff not to file a grievance."  See Verley v. Wright, No. 02 Civ. 1182 (PKC), 2007 WL 2822199, at *8 (S.D.N.Y. Sept. 27, 2007).  Furthermore, there are no special circumstances that justify Plaintiff's failure to comply with the PLRA.  Accordingly, because Plaintiff has not satisfied the exhaustion requirements of the PLRA, Defendants' motion for summary judgment as to Plaintiff's deprivation of property claim will be granted.

  **B.**  **Plaintiff's Failure to Exhaust State Law Remedies**

   In addition to his obligation to exhaust administrative remedies under the PLRA, Plaintiff was required to exhaust his remedies under state law.

   **1.**  **Applicable Law**

   "Deprivation of property by a state actor, whether intentional or negligent, does not give rise to a claim under § 1983 so long as the law of that state provides for an adequate post-deprivation remedy and the deprivation was the result of a 'random and unauthorized' act." Dove v. City of New York, No. 99 Civ. 3020 (DC), 2000 WL 342682, at *2 (S.D.N.Y. Mar. 30, 2000) (collecting cases); see also Nogbou v. Mayrose, No. 07 Civ. 3763, 2009 WL 3334805, at *5 (S.D.N.Y. Oct. 15, 2009).  Butler v. Castro, 896 F.2d 698, 700 (2d Cir. 1990) ("[T]he existence of independent state relief does not defeat a Section 1983 claim where the deprivation complained of results from the operation of established state procedures.").

   Here, Plaintiff has not offered any evidence that the deprivation of his property was the result of any "established state procedures," as opposed to a "random and unauthorized"

act by defendant officers.  See Nogbou, 2009 WL 3334805, at *6 (citing Butler, 896 F.2d at

700).  "Further, post-deprivation remedies are available under New York law 'in the form of

state law causes of action for negligence, replevin, or conversion.'"  Id. (quoting Dove, 2000 WL

342682, at *2).  Accordingly, Plaintiff was required to pursue post-deprivation remedies under

state law.  See id. at *5; Dove, 2000 WL 342682, at *2.

        At his deposition, however, Plaintiff testified that he had never filed any state

claims to recover his property:

> Q.  Did you ever file any claims in New York State court to recover your
> property?
> A.  No.
> Q.  Did you ever file a claim for replevin to get your property back?
> . . .
> A.  No.  I never knew nothing about that.
> Q.  Did you ever file a negligence claim to get your property back?
> A.  No.
> Q.  Did you ever file a conversion claim?
> A.  No.
> Q.  And you said as of today you haven't received your property back?
> A.  No, I haven't.
> Q.  But you do have [property] vouchers, correct?
> A.  Yes, I do.
> Q.  And you haven't tried to obtain your property back by using the vouchers?
> A.  No.

(Myerberg Decl., Ex. A (Johnson Tr.) at 140-41)

        Because New York provides an adequate post-deprivation remedy in the form of

state law causes of action, and because Plaintiff has not presented any evidence that he was

deprived of property as the result of established state procedures, his § 1983 claim for the loss of

his property must also be dismissed for failure to exhaust state law remedies.  See Mejia v. N.Y.

City Dep't of Corr., No. 96-CV-2306 JG, 1999 WL 138306, at *4 (E.D.N.Y. Mar. 5, 1999)

(availability of state law negligence, replevin, or conversion claims defeats § 1983 action for loss

of property); Cook v. City of New York, 607 F. Supp. 702, 704 (S.D.N.Y. 1985) (same).[7]

III.   **PLAINTIFF'S STATE LAW CLAIMS WILL BE DISMISSED**

      "In general, where . . . federal claims are dismissed before trial, the state claims

should be dismissed as well." Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d Cir. 1998).  Courts in

this District regularly decline to exercise supplemental jurisdiction over remaining pendant state

law claims where federal law claims have been dismissed.  See, e.g., 236 Cannon Realty, LLC v.

Ziss, No. 02 Civ.6683(WHP), 2005 WL 289752, at *10 (S.D.N.Y. Feb. 8, 2005) ("Having

granted summary judgment dismissing all of Cannon's federal claims, this Court declines to

exercise supplemental jurisdiction over Cannon's pendant state law claims pursuant to 28 U .S.C.

§ 1367."); see also Bowen v. City of New York, No. 09 Civ. 7585(RJS), 2010 WL 5122590, at

*5 (S.D.N.Y. Dec. 10, 2010) ("Because all of Plaintiff's federal claims are dismissed, the Court

declines to exercise supplemental jurisdiction over Plaintiffs remaining state law claims.").

---

[7]  Because the Court finds that Plaintiff has not offered sufficient evidence to demonstrate that he
suffered any violation of his constitutional rights, it does not reach the question of qualified
immunity.  See, e.g., Russo v. City of Bridgeport, 479 F.3d 196, 203 (2d Cir. 2007) ("As in any
§ 1983 case on summary judgment, we first determine whether, '[t]aken in the light most
favorable to the party asserting the injury, [ ] the facts alleged show the [defendants'] conduct
violated a constitutional right,' and only thereafter consider whether qualified immunity shields
individual defendants." (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)); Farrell v. Burke,
449 F.3d 470, 499 (2d Cir. 2006) ("Because we have found no cognizable violation of
[plaintiff's] rights in this case, we need not reach the question of qualified immunity.").

The Court likewise does not reach Defendants' arguments that the Department of Corrections is
a non-suable entity and that Plaintiff has not made out the elements of a Monell claim. See, e.g.,
Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006) ("Because the district court
properly found no underlying constitutional violation, its decision not to address the municipal
defendants' liability under Monell was entirely correct.")

Here, Defendants' motion for summary judgment will be granted as to all of

Plaintiff's federal claims, and the Court declines to exercise supplemental jurisdiction over the

remaining pendant state law claims. See Ziss, 2005 WL 289752, at *10.

## **CONCLUSION**

For the reasons stated above, Defendants' motion for summary judgment is

GRANTED.

The Clerk of the Court is directed to terminate the motion (Docket No. 18) and to

close this case.

Dated: New York, New York
       March 18, 2011

SO ORDERED.

_____

Paul G. Gardephe
United States District Judge